UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RUDDENE MILLER,

       Petitioner,

                                   Civil Action No. 10-cv-10237

v.                                   HON. BERNARD A. FRIEDMAN
                                   UNITED STATES DISTRICT JUDGE

NICK LUDWICK,

       Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS

             Ruddene Miller, ("petitioner"), confined at the Muskegon Correctional Facility in Muskegon, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction for first-degree premeditated murder, Mich. Comp. Laws § 750.316(1)(a); first-degree felony murder, Mich. Comp. Laws § 750.316(1)(b); and felony firearm, Mich. Comp. Laws § 750.227b.[1] For the reasons stated below, the Court denies the petition for writ of habeas corpus**.**

## I.  Background

             Petitioner was convicted of the above offenses following a jury trial in the Wayne County Circuit Court.  This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

---

[1] Petitioner was also convicted of first-degree home invasion, but that conviction was vacated at sentencing on Double Jeopardy grounds.

This case arises out of a shooting incident that resulted in the death of Antoine Webb. The shooting occurred at the home of Brenda Grissom, located at 9072 Burt Road, Detroit, Michigan, in the early evening of October 3, 2005. Defendant's girlfriend, Veronica Driskill, lived directly across the street from Grissom, at 9079 Burt Road. On October 3, 2005, defendant visited Driskill's home to work on a van. Witnesses heard a gun shot from the Driskill home as they sat on the front porch of the Grissom home. They then saw Webb run from the Driskill's backyard to the Grissom home. Defendant and another man, who was only identified as Marshall, chased Webb. Webb ran to the Grissom porch and entered the Grissom home. Witnesses saw defendant with a weapon. Defendant and Marshall then forced the front door open to follow Webb. Two gunshots were heard from inside the Grissom home. Then, defendant dove out a screen window, ran back to the Driskill home and drove off in a van.

Defendant denied shooting Webb. Instead, he claimed that Webb and Marshall had exchanged swear words in the van at the Driskill garage, and a defense witness testified that he saw Marshall shoot Webb in the van. Defendant claimed he chased Webb to protect Webb from Marshall. Defendant also asserted that Marshall stuck the gun inside the door jam and shot twice.

Officers obtained a warrant to search the residence where the defendant was located. Defendant was arrested in his home on March 25, 2006. Defendant had been hiding in the attic.

*People v. Miller,* No. 276589, * 1-2 (Mich.Ct.App. June 5, 2008).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 482 Mich. 1035; 757 N.W.2d 89 (2008); *reconsideration den.* 483 Mich. 884; 759 N.W.2d 375 (2009). On January 13, 2010, petitioner filed a petition for writ of habeas corpus. [2] On May 26, 2011, the petition was held in abeyance by this Court's predecessor, the Honorable Lawrence P. Zatkoff, so that petitioner could return to the state court to exhaust additional claims. The case was administratively closed.

---

[2] Under the prison mailbox rule, this Court will assume that petitioner actually filed his habeas petition on January 13, 2010, the date that it was signed and dated. *See Towns v. U.S.,* 190 F. 3d 468, 469 (6th Cir. 1999).

2

Petitioner filed a post-conviction motion for relief from judgment, which was denied. *People v. Miller*, No. 06-4925-01 (Wayne County Circuit Court, June 14, 2012). The Michigan appellate courts denied petitioner leave to appeal. *People v. Miller*, No. 311163 (Mich.Ct.App. April 25, 2013); *lv. Den.* 495 Mich. 899, 839 N.W.2d 480 (2013).

On June 11, 2014, Judge Zatkoff issued an order lifting the stay, reinstating petitioner's habeas petition, and granted petitioner permission to file an amended habeas petition.[3]

In his original habeas petition, petitioner sought habeas relief on the following grounds:

> Ground One: Petitioner's conviction for home invasion, premeditated murder and felony murder must be reversed and dismissed, as the prosecution failed to present legally sufficient evidence that . . . he was either the principle to or an aider and abettor, in violation of his right to due process of law.
>
> Supplemental Ground One: Trial counsel rendered ineffective assistance when faili[n]g to challenge the illegality of petitioner's arrest and for not filing pretrial motions to suppress fruits of illegal arrest which violated petitioner's U.S. Fourth Amendment right against illegal search and seizure.
>
> Supplemental Ground One-B: Petitioner's mother lived in a two story flat apart[m]ent. Petitioner contests the warrantless search of his residence where Petitioner lived in the upstairs apartment, which contained two separate addresses defining two separate residence[s].

---

[3] Respondent argues that petitioner's amended habeas petition should be rejected because petitioner failed to sign it. Although a district court may refuse to file, or may even dismiss, an unsigned and unverified petition for writ of habeas corpus, the defect is one that district court may, if it sees fit, disregard. *Hendricks v. Vasquez*, 908 F.2d 490, 491 (9th Cir. 1990). The Court declines to dismiss the amended petition on this basis. The Court also rejects respondent's argument that petitioner's amended petition supersedes the claims contained in petitioner's original petition. When Judge Zatkoff lifted the stay, he ordered that the original habeas petition be reopened. Although Judge Zatkoff permitted petitioner to file an amended habeas petition, he did not specifically preclude petitioner from continuing to assert the claims that he raised in his original petition.

Warrant was executed in the down stairs apartment, the police entered the upstairs dwelling where they secured the petitioner.

Ground Two: Petitioner was deprived of his constitutional right to the effective assistance of counsel where the predicate offense for felony murder was home invasion and petitioner testified that he entered the house to prevent the murder but counsel failed to request instructions on the defenses of duress and defense of another.

Supplemental Ground Two: The prosecutor's misconduct operated to deny petitioner a fair trial.

Supplemental Ground Two-A: The prosecutor improperly vouched for the credibility of his witnesses and gave his own opinion as to petitioner's guilt.

Supplemental Ground Two-B: The prosecutor's misconduct deprived petitioner of due process of law and a fair and impartial trial where the prosecutor argued facts not in evidence.

Ground Three: The prosecutor violated petitioner's state and federal constitutional due process rights to a fair trial when he improperly vouched for the credibility of his witnesses and expressed his opinion that petitioner and his witnesses had lied. In the alternative, petitioner was denied his right to effective assistance of counsel due to his trial attorney's failure to object to the prosecutor's improper arguments.

Supplemental Ground Three: Petitioner's trial counsel rendered ineffective assistance for not calling known *res gestae* witness to testify in petitioner's favor.

Supplemental Ground Three-A: Trial counsel was in violation of petitioner's Sixth and Fourteenth Amend[me]nts, thereby, denying petitioner due process, effective assistance of counsel, and the right to present an effective appeal in his only appeal of right. Therefore it is incumbent for this court to remand this case back to the trial court for an evidentiary hearing.

In his amended habeas petition, petitioner seeks habeas relief on the following

grounds:

I. Defendant's due process rights were violated and he is entitled to a new trial based on newly discovered evidence, w[here] the

4

prosecutor knowingly used perjured testimony from Veronica Driskill, whose testimony was b[ased] on intimidation and coercion.

II. Mr. Miller is entitled to a new trial where the public was excluded from the courtroom and there was no accommodation for public access to the procee[dings] of the trial process, during jury selection and maybe other portions of the trial process which violated Mr. Miller's Sixth Amendment right to a public trial.

III. Defendant's counsel was constitutionally ineffective when he failed to object to the closure of the court room to the public.

IV. Mr. Miller was denied his Sixth and Fourteenth Amendment rights to the effective assistance of appellate counsel where counsel's performance fell below objecti[v]e standards of reasonableness resulting in prejudice.

V. Defendant Miller was deprived of his constitutional right to effective assistance of counsel when his trial attorney (1) failed to object to evidence of an anonymous tip identifying defendant as a suspect; (2) failed to object to inadmissible hearsay on confrontational grounds; (3) counsel's failure to investigate and raise issues of constitutional magnitude.

VI. Mr. Miller meets the cause and prejudice standard set forth in 6.508(D) by showing constitutionally ineffective assistance of both trial and appellate counsel in violation of the Sixth Amendment right to effective assistance of counsel, and the Fourteenth Amendment Due Process Right Clause.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

5

Supreme Court of the United States; or
(2) resulted in a decision that was based on an
unreasonable determination of the facts in light of the
evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "if the state court confronts facts that are materially indistinguishable from relevant Supreme Court precedent and arrives at a [opposite] result[.]" *Williams v. Taylor*, 529 U.S. 362, 405 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case[.]" *Id.* at 409. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'*Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)." *Renico v. Lett*, 559 U.S. 766, 773 (2010). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)).

6

Furthermore, "[u]nder § 2254(d), a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

## III.  Discussion

### A.  The sufficiency of evidence claims.

Petitioner first claims that there was insufficient evidence to convict him, either as a principal or aider and abettor, of first-degree premeditated murder or first-degree felony murder.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  But "the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction . . . [is] whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).  This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  *Id.* at 334 (quoting *Woodby v. INS*, 385 U.S. 276, 282 (1966)).  "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* at 319 (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)).  "'Circumstantial evidence alone is sufficient to support a conviction, and '[i]t is not necessary for the evidence at trial to exclude every reasonable hypothesis except that of guilt.'" *Johnson v. Coyle,* 200 F. 3d 987, 992 (6th Cir. 2000) (quoting *United States v. Reed*, 167 F.3d 984, 992 (6th Cir. 1999)).

More importantly, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011) (quoting *Renico*, 559 U.S. at 773). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Therefore, for a federal habeas court reviewing the sufficiency of evidence for a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S.Ct. 2060, 2065 (2012).

Finally, on habeas review, a federal court does not reweigh the evidence or redetermine credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). "It is the province of the factfinder . . . to weigh the probative value of the evidence and resolve any conflicts in testimony." *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992) (citing *Jackson v. Virgina*, 443 U.S. 307, 319 (1979)). A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir.2003).

Petitioner initially argued that there was insufficient evidence to establish that the killing was done with premeditation and deliberation. The Michigan Court of Appeals rejected petitioner's claim:

> Defendant and Webb were together in Driskill's backyard shortly before Webb was killed. A shot was fired in Driskill's backyard. Then, Webb ran across the street to Grissom's porch. He was visibly unharmed, but yelling for help to Ashley Hampton and Necolas

Cooper, who sat on Grissom's porch. Without permission, Webb barricaded himself inside Grissom's front door. Defendant and Marshall chased Webb to the porch. Hampton observed that defendant wore a basketball jersey and had a gun. Although Cooper could not identify defendant, he testified that the man wearing the jersey was armed. Defendant and Marshall forced Grissom's door open. Seconds later, more shots were fired. Webb subsequently died as a result of two gunshot wounds, one to the head and one to the abdomen.

Defendant's pursuit of Webb across the street to Grissom's home and his concerted effort to force Grissom's door open can also be used to infer that the defendant had time to take a "second look." Further, defendant's actions following Webb's murder are consistent with premeditation. After the shooting, defendant escaped through Grissom's window and ran across the street to Webb's van, in which he and an unidentified passenger sped away. Later, defendant called Driskill to check on Webb's status and inform her that he was leaving town, suggesting consciousness of guilt. Defendant also hid from police in an attic when they arrived at his home with an arrest warrant. Viewed in a light most favorable to the prosecution, this evidence is sufficient to establish premeditation beyond a reasonable doubt.

*Miller,* Slip. Op. at * 2 (internal citations omitted).

To constitute first-degree murder in Michigan, the state must establish that a defendant's intentional killing of another was deliberated and premeditated. *See Scott v. Elo*, 302 F. 3d 598, 602 (6th Cir. 2002) (citing *People v. Schollaert*, 194 Mich. App. 158 (1992)). "The elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing." *See Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 596 (E.D. Mich. 2001). Premeditation may be established through evidence of the following factors:

1. the prior relationship of the parties;
2. the defendant's actions before the killing;
3. the circumstances of the killing itself;
4. the defendant's conduct after the homicide.

*People v. Anderson*, 209 Mich. App. 527, 537 (1995).

9

Although the minimum time required under Michigan law to premeditate "'is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a 'second look.'" *See Williams v. Jones,* 231 F. Supp. 2d 586, 594-95 (E.D. Mich. 2002) (quoting *People v. Vail*, 393 Mich. 460, 469 (1975)). "A few seconds between the antagonistic action between the defendant and the victim and the defendant's decision to murder the victim may be sufficient to create a jury question on the issue of premeditation." *Alder v. Burt*, 240 F. Supp. 2d 651, 663 (E.D. Mich. 2003). "[A]n opportunity for a 'second look' may occur in a matter of seconds, minutes, or hours, depending upon the totality of the circumstances surrounding the killing." *Johnson*, 159 F. Supp. 2d at 596 (quoting *People v. Berthiaume*, 59 Mich. App. 451, 456 (1975)).

The Michigan Court of Appeals' conclusion that there was sufficient evidence of premeditation was reasonable. The fact that petitioner pursued after the victim with a gun and then shot him would support a finding of premeditation and deliberation so as to support a first-degree murder conviction. *See, e.g., Daniels v. Burke*, 83 F.3d 760, 766 (6th Cir. 1996). The victim received two gunshot wounds, one to the right side of the head and another through the abdomen. Under Michigan law, "deliberation and premeditation may be logically inferred from . . . the wounds inflicted upon vital parts" of the victim's body. *See Lundberg v. Buchkoe,* 338 F. 2d 62, 69 (6th Cir. 1964). Further, the fact that petitioner did not attempt to seek medical help for the victim after he was shot could lead a rational trier of fact to conclude that petitioner acted with premeditation and deliberation when he killed the victim. *See Delisle v. Rivers*, 161 F. 3d 370, 389 (6th Cir. 1998) (finding circumstantial evidence of premeditation due to petitioner's failure to help victims after car drove into lake). Finally, there was also evidence that petitioner fled the scene and was later found

10

hiding in his mother's house when the police came looking for him.  The fact that petitioner attempted to elude the police after the shooting would also support a finding of premeditation and deliberation. *See, e.g.*, *Marsack v. Howes*, 300 F. Supp. 2d 483, 492 (E.D. Mich. 2004).

There was also sufficient evidence to convict petitioner of felony murder.  Under Michigan law, the elements of first-degree felony murder are:

> (1) the killing of a human being,
> (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result,
> (3) while committing, attempting to commit, or assisting in the commission of any of a set of specifically enumerated felonies.

*Matthews v. Abramajtys,* 319 F. 3d at 789 (citing to *People v. Carines*, 460 Mich. 750, 759 (1999)).

The underlying felony in this case was first-degree home invasion.  "Michigan's first-degree home invasion statute includes all of the elements of the burglary of a dwelling, but also requires that the defendant be armed with a dangerous weapon or that the dwelling be occupied." *See Johnson v. Warren,* 344 F. Supp. 2d 1081, 1093 (E.D. Mich. 2004) (citing *United States v. Garcia-Serrano,* 107 Fed. Appx. 495, 496-97 (6th Cir. 2004)).  The intent element "may reasonably be inferred from the nature, time and place of defendant's acts before and during the breaking and entering" of the dwelling. *See People v. Uhl*, 169 Mich. App 217, 220 (1988).

Petitioner claims that he lacked the requisite intent to commit the underlying felony of first-degree home invasion, because he entered the Grissom home under duress to save the victim from Marshall.  In rejecting this claim, the Michigan Court of Appeals ruled that there was sufficient evidence to disprove petitioner's duress theory, in light of the fact that petitioner carried a firearm,

11

chased the victim side-by-side with Marshall, and forced open Grissom's door to reach the victim. *Miller,* Slip. Op. at * 3.  This Court agrees that when viewed in a light most favorable to the prosecution, there was sufficient evidence for a rational trier of fact to conclude that petitioner committed the offense of felony murder.

Petitioner further contends that there was insufficient evidence to establish the identity of the shooter in this case.  Petitioner, however, was charged under alternate theories of being the principal or an aider and abettor.  In rejecting petitioner's claim, the Michigan Court of Appeals ruled:

> A reasonable jury could have found that Marshall was the principal and defendant was an aider and abettor to Webb's murder. Defendant's witnesses claimed that Marshall shot at Webb in Driskill's backyard.  Then, both men entered Grissom's home before the subsequent shots. No witnesses observed the shooting. However, defendant testified that Marshall shot at Webb through Grissom's door.  Even if Marshall was the shooter, there was evidence that defendant's acts encouraged and assisted Marshall.  Defendant carried a gun.  Defendant chased after Webb, side by side with Marshall.  Both men also struggled to open Grissom's door to reach Webb. After Webb was killed, defendant sped away with an unidentified occupant in Webb's van.  Defendant's knowledge of Marshall's intent could be inferred from the assistance he provided to Marshall.  Therefore, there was also sufficient evidence to convict defendant of premeditated first-degree murder as an aider and abettor.

*Miller,* Slip. Op. at * 3.

To support a finding under Michigan law that a defendant aided and abetted in the commission of a crime, the prosecutor must show that:

> (1) the crime charged was committed by the defendant or some other person,
> (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and
> (3) the defendant intended the commission of the crime or knew that the principal intended to commit the crime at the time he gave aid and

encouragement.

*Riley v. Berghuis,* 481 F. 3d 315, 322 (6th Cir. 2007) (citing *Carines,* 460 Mich. at 757-58).

The Michigan Court of Appeals' conclusion that there was sufficient evidence to convict petitioner as an aider and abettor was reasonable. Petitioner chased after the victim, side-by-side with Marshall. Petitioner was armed with a firearm at the time. Petitioner forced open Grissom's door to reach the victim. After the victim was murdered, petitioner fled the scene in the victim's van. Petitioner later told his girlfriend that he was leaving town. The Michigan Court of Appeals' determination that there was sufficient evidence to convict petitioner of these crimes was an objectively reasonable application of clearly established federal law, where there was compelling evidence that petitioner, at a minimum, aided and abetted Marshall in the murder. *See Dillard v. Prelesnik,* 156 F. Supp. 2d 798, 808-09 (E.D. Mich. 2001).

To the extent that petitioner challenges the credibility of the prosecution witnesses, he would not be entitled to relief. "'[A]ttacks on witness credibility are simply challenges to the quality of the government's evidence and not to the sufficiency of the evidence.'" *Martin v. Mitchell*, 280 F. 3d 594, 618 (6th Cir. 2002) (citing *United States v. Adamo*, 742 F.2d 927, 935 (6th Cir. 1984)). An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims. *Schlup v. Delo*, 513 U.S. 298, 330 (1995). The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim. *Id.* Thus, petitioner is not entitled to habeas relief on his first claim.

**B. The ineffective assistance of counsel claims.**

Petitioner next claims that he was denied the effective assistance of counsel. To show that he was denied the effective assistance of counsel under federal constitutional standards, a

13

defendant must satisfy a two pronged test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*.  In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be "sound trial strategy." *Id.* at 689.  "Second, the defendant must show that the deficient performance prejudiced the defense." *Id*. at 687.  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011) (quoting *Harrington*, 562 U.S. at 112).  The Supreme Court's holding in "*Strickland* places the burden on the defendant [who raises a claim of ineffective assistance of counsel], not the State, to show a 'reasonable probability' that the result would have been different" but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

More importantly, on habeas review, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable— a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).  "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland's* standard."

14

*Harrington*, 562 U.S. at 101. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles*, 556 U.S. at 123 (citing *Yarborough*, 541 U.S. at 664). Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101. "'Surmounting *Strickland's* high bar is never an easy task.'" *Id.* at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

Petitioner initially argued that his counsel was ineffective for failing to request jury instructions on the defenses of duress and defense of another person. The Michigan Court of Appeals rejected petitioner's claim:

> Defendant did not establish the elements of duress in this case. Rather, defendant claims that Marshall threatened Webb and defendant entered Grissom's home to protect Webb. However, because the threat was directed at Webb, not defendant, a reasonable person would not fear death or serious bodily harm in this situation. Therefore, trial counsel's failure to request a [duress] instruction, inapplicable to the facts, does not constitute ineffective assistance of counsel. *People v Truong*, 218 Mich App 325, 341; 553 NW2d 692 (1996).
>
> * * *
>
> Defendant's testimony presented some facts to support a defense of others instruction. He testified that he only went into Grissom's house to "to stop anything that was going on" because he "wouldn't let nothing happen to nobody I wouldn't want to happen to myself." He claimed that he jammed Marshall's hand in the door to protect Webb. He also testified that he did not intend to commit any offenses when he entered Grissom's house.
>
> Despite these facts, trial counsel's failure to request an instruction on the defense of others did not prejudice defendant so that he was

deprived of a fair trial. *Grant, supra* at 485-486. The trial court instructed the jury that it could find defendant guilty of first-degree home invasion only if he entered the home with the intent to inflict injury upon an individual. The jury is presumed to follow the trial court's instructions. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). If the jury believed defendant's testimony that he was trying to protect Webb, and only entered Grissom's home to stop Marshall, it would not have convicted him of first-degree home invasion. Presumably, however, the jury found testimony that defendant chased Webb side by side with Marshall, carried a gun, and forced Grissom's door open to be sufficient to prove defendant's intent for the home invasion conviction. Therefore, we conclude that defendant's trial counsel's failure to request an instruction on defense of others did not deprive defendant of a fair trial.

*Miller,* Slip. Op. at * 4-5.

The Supreme Court "has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success." *Knowles,* 556 U.S. at 123. While it is true that the right to act in self-defense includes the right to defend another person, *Johnigan v. Elo*, 207 F. Supp. 2d 599, 609 (E.D. Mich. 2002) (citing *People v. Curtis*, 52 Mich. 616, 622 (1884)), Michigan courts have repeatedly held that duress is not a defense to homicide. *See, e.g.*, *People v. Gimotty*, 216 Mich. App. 254, 257 (1996); *People v. Dittis*, 157 Mich.App. 38, 41 (1987); *see also Gimotty v. Elo,* 40 Fed. Appx. 29, 33 (6th Cir. 2002). There is nothing in Michigan caselaw which would prohibit the state courts "from extending the rationale behind excluding duress as a defense in homicide cases" to the felony charge underlying the felony murder count, which resulted in death. *Gimotty*, 40 Fed. Appx. at 33. Because duress is not a defense to first-degree premeditated or felony murder in Michigan or to the felony underlying the charge of felony murder, counsel was not ineffective for failing to request an instruction on duress.

The Michigan Court of Appeals' conclusion that defense counsel's failure to request a defense of other instruction did not prejudice defendant was a reasonable application of *Strictland*.

The testimony in this case established that petitioner chased after the victim side-by-side with Marshall, was armed with a weapon, and forced open Grissom's door before going inside, where the victim was shot twice. Petitioner did not remain at the scene to assist the victim but fled the scene in the victim's van. Petitioner told his girlfriend after the shooting that he was leaving town. The police subsequently found petitioner hiding in the attic of his mother's house. Based on this testimony, a trier of fact would not likely have believed that petitioner was merely attempting to defend the victim from Marshall, therefore, counsel's failure to request a jury instruction on defense of others was not prejudicial.

Petitioner next claims that trial counsel was ineffective for failing to move to suppress evidence that petitioner was found by the police to be hiding in the attic at the time of his arrest, claiming that such evidence was the fruit of an unlawful search of his mother's house. In rejecting this argument, the Michigan Court of Appeals stated:

> There is no evidence in the lower court record to substantiate defendant's claims. *Rodriguez, supra* at 38. An arrest warrant carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within. See *People v Gillam*, 479 Mich 253, 260-261; 734 NW2d 585 (2007). Here, a felony arrest warrant was issued well before defendant's arrest and Officer Ronald Hopp was informed that defendant was inside the home. The police had authority to enter defendant's home; therefore, his arrest was lawful. Consequently, a motion to suppress evidence obtained from a lawful arrest would have been futile and defendant's trial counsel's failure to make such a motion was not ineffective. *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003) (counsel renders effective assistance even if counsel fails to raise futile objections).

*Miller,* Slip. Op. at * 4.

The Michigan Court of Appeals' conclusion that defense counsel's failure to move to suppress the evidence did not prejudice petitioner was a reasonable application of *Strictland*. The

17

police, via the felony arrest warrant, had authority to enter petitioner's home and seize evidence. Any motion to suppress evidence from this lawful arrest would have been futile. Petitioner has therefore not been prejudiced by defense counsel's failure to raise a futile motion to suppress.

Moreover, "[w]here defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). "An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction." *United States v. Crews*, 445 U.S. 463, 474 (1980) (citing *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975)). Further, the Supreme Court has held that "[t]he 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred." *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984). Although the exclusionary rule prohibits the introduction at trial of evidence that was seized in violation of Fourth Amendment to the U.S. Constitution, a criminal defendant "is not himself a suppressible 'fruit,' and the illegality of his detention cannot deprive the Government of the opportunity to prove his guilt through the introduction of evidence wholly untainted by the police misconduct." *Crews*, 445 U.S. at 474.

Petitioner does not identify any evidence other than his own body that was seized during this allegedly unlawful arrest. A police officer's observations of a defendant which are used to establish the defendant's consciousness of guilt cannot be considered the suppressible fruit of an illegal arrest or search. *See U.S. v. Foppe*, 993 F. 2d 1444, 1448-50 (9th Cir. 1993). Because a

18

motion to suppress evidence that petitioner had been hiding at the time of arrest would have been futile, the Michigan Court of Appeals' conclusion that petitioner was not prejudiced by counsel's failure to file such a motion was reasonable.

Petitioner finally alleges that trial counsel failed to investigate and call as *res gestae* witnesses Deborah Coleman, Keira Miller, Senita Upshaw, and alibi witness, Mercedes Steffer. The Michigan Court of Appeals rejected this claim:

> There is no evidence in the lower court record that Coleman, Miller, or Upshaw were present during the shooting, or its aftermath, to add relevant testimony. Similarly, there is no evidence in the lower court record, or defendant's brief, regarding Steffer or defendant's alleged alibi. Given that there was no evidentiary hearing and no factual support concerning Coleman, Miller, Upshaw or Steffer's alleged testimony, there are no mistakes apparent on the record with respect to counsel's failure to call these witnesses. Thus, defendant is unable to establish an ineffective assistance of counsel claim as it relates to the purported alibi or res gestae testimony.

*Miller,* Slip. Op. at * 6.

Petitioner has attached to his original petition affidavits from Deborah Coleman and Keira Miller, who claim that they were present at the time of petitioner's arrest and that the police did not have a search warrant nor had been given consent by petitioner's mother to enter the home. In light of the fact that petitioner's identity and the police officers' observations of him could not have been suppressed as fruits of an illegal arrest, petitioner was not prejudiced by counsel's failure to call either woman to testify. Moreover, the Michigan Court of Appeals' conclusion that defense counsel's failure to call these witnesses did not prejudice petitioner was reasonable because the record provides no evidence that Coleman and Miller were present during the shooting, or its aftermath.

With respect to Senita Upshaw and Mercedes Steffer, petitioner has failed to present

19

any evidence, either to the Michigan courts or to this Court, concerning their proposed testimony. By failing to present any evidence to the state courts in support of his ineffective assistance of counsel claim, petitioner is not entitled to an evidentiary hearing on this claim with this Court, "as he has barred himself from developing the claim further." *Cooey v. Coyle*, 289 F. 3d 882, 893 (6th Cir. 2002) (citing 28 U.S.C. § 2254(e)(2)(A)(ii)).  Petitioner has failed to attach any offer of proof or any affidavits sworn by these two proposed witnesses.  Petitioner has offered, neither to the Michigan courts nor to this Court, any evidence beyond his own assertions as to whether the witnesses would have been able to testify and what the content of these witnesses' testimony would have been.  In the absence of such proof, petitioner is unable to establish that he was prejudiced by counsel's failure to call these witnesses to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim.  *See Clark v. Waller,* 490 F. 3d 551, 557 (6th Cir. 2007). Thus, the Michigan Court of Appeals' conclusion that petitioner was not entitled to relief on his ineffective assistance of counsel claims was reasonable.

**C.  The prosecutorial misconduct claims.**

Petitioner next claims that he was denied a fair trial because of prosecutorial misconduct.[4]  "Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  Prosecutorial misconduct will form the basis for habeas relief only if the conduct

---

[4]  Respondent contends that petitioner's prosecutorial misconduct claims are procedurally defaulted because he failed to object to them at trial.  Petitioner claims that trial counsel was ineffective for failing to object to the alleged misconduct.  Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claims, it would be easier to consider the merits of these claims. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances surrounding each individual case." *Angel v. Overberg*, 682 F. 2d 605, 608 (6th Cir. 1982). The Court must focus on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F. 3d 959, 964 (6th Cir. 1997) (quoting *Serra v. Michi. Dep't of Corrs.*, 4 F.3d 1348, 1355 (6th Cir. 1993)). Finally, "the Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F. 3d 501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. at 645).

Petitioner first claims that the prosecutor improperly bolstered or vouched for witnesses by arguing that certain prosecution witnesses had no reason to lie, as well as by arguing that petitioner and two of his defense witnesses lied. The Michigan Court of Appeals rejected petitioner's argument:

> During his closing argument, the prosecutor did not imply that he had some special knowledge of the witnesses' truthfulness. In fact, the prosecutor made no comments at all about his personal knowledge or beliefs. Instead, the prosecutor argued that Cooper and Hampton had no reason to lie. He relied on that defendant "had no issues with them" and they were merely neighbors who observed the incident. The prosecutor also argued that defendant, Hardy, and Washington were not worthy of belief. Defendant's testimony was self-serving. Hardy did not report to the police her claim that Marshall, not defendant, carried the gun. Similarly, Washington did not contact authorities until the week of trial, after he had visited defendant in jail several times. Further, Hardy's and Washington's close relationships with defendant provided motivation to protect him. Given that conflicting evidence made credibility important to the prosecutor's burden of proof in this case, his closing argument, highlighting evidence of credibility, was not improper.

21

*Miller,* Slip. Op. at * 7.

"[A] prosecutor may not express a personal opinion concerning the guilt of the defendant or the credibility of trial witnesses, because such personal assurances of guilt or vouching for the veracity of witnesses by the [prosecutor] exceeds the legitimate advocate's role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F. 3d 731, 737 (6th Cir. 1999) (abrogated on other grounds) (citing *United States v. Carroll*, 26 F.3d 1380, 1387-89 (6th Cir. 1994)). However, a prosecutor "is free to argue that the jury should arrive at a particular conclusion based upon the record evidence[.]" *Id.* "'The test for improper vouching [for a witness] is whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility.'" *United States v. Causey*, 834 F. 2d 1277, 1283 (6th Cir. 1987) (quoting *United States v. Dennis*, 786 F.2d 1029, 1046 (11th Cir. 1986)). It is worth noting that the Sixth Circuit has never granted habeas relief for improper vouching. *Byrd v. Collins*, 209 F. 3d 486, 537 n. 43 (6th Cir. 2000). A prosecutor does not engage in vouching by arguing that his witnesses have no reason or motivation to lie, when such comments are based on the evidence and do not reflect a personal belief of the prosecutor. *See United States v. Jackson,* 473 F. 3d 660, 672 (6th Cir. 2007).

The Michigan Court of Appeals concluded that the prosecutor's argument that the prosecution witnesses had no reason to testify falsely was based on reasonable inferences from the evidence. In reaching this conclusion, the court noted that the prosecutor "relied on evidence that defendant 'had no issues with [the prosecution witnesses]' and that they were merely neighbors who observed the incident." *Miller,* Slip. Op. at * 7. As such, the court found that petitioner was not entitled to habeas relief on this claim. Further, the prosecutor's argument that petitioner and his

22

witnesses should not be believed was based on inferences from the evidence presented in court and not upon any personal knowledge. Because the prosecutor's comment about the defense witnesses being untruthful was based on the evidence presented in court, was only a small portion of the prosecutor's argument, and did not create the impression that the prosecutor knew of evidence not presented to the jury, the prosecutor's comments did not deprive petitioner of a fair trial. *See Cristini v. McKee*, 526 F. 3d 888, 902 (6th Cir. 2008). Finally, the jury was instructed that the lawyers' statements and arguments were not evidence. This instruction by the court cured any prejudice that may have arisen from any alleged improper vouching. *Byrd*, 209 F. 3d at 537.

Petitioner next contends that the prosecutor argued facts that were not supported by the evidence by stating that both Cooper and Hampton testified that petitioner carried a gun, when Cooper was unable to positively identify petitioner at trial. In rejecting this argument, the Michigan Court of Appeals stated:

> Hampton testified that defendant held a gun. Cooper could not identify defendant at trial. Nevertheless, the evidence showed that defendant wore a basketball jersey on the day of the shooting. Cooper claimed that the person wearing the jersey carried the gun. Therefore, it could be reasonably inferred from Cooper's testimony that defendant carried the gun and the prosecutor's statement was not improper. *Bahoda*, *supra* at 282.

*Miller,* Slip. Op. at * 6.

"Misrepresenting facts in evidence [by a prosecutor] can amount to substantial error because doing so 'may profoundly impress a jury and may have a significant impact on the jury's deliberations.'" *Washington v. Hofbauer*, 228 F. 3d 689, 700 (6th Cir. 2000) (quoting *Donnelly*, 416 U.S. at 646)). Likewise, "it is improper for a prosecutor, during closing arguments, to bring to the

attention of the jury any 'purported facts that are not in evidence and are prejudicial.'" *Byrd*, 209 F. 3d at 535 (quoting *United States v. Wiedyk*, 71 F.3d 602, 610 (6th Cir. 1995)). "However, prosecutors 'must be given leeway to argue reasonable inferences from the evidence.'" *Id.* (quoting *United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996)).

In the present case, the Michigan Court of Appeals' conclusion that the prosecutor argued inferences rooted in the evidence was a reasonable application of law. Although Cooper did not positively identify petitioner at trial, he testified that the person carrying the gun wore a jersey. Evidence showed that petitioner was wearing a jersey at the time of the shooting. *See Miller*, Slip. Op. at * 6. Because it could be reasonably inferred from Cooper's testimony that petitioner carried a gun, the prosecutor's remarks were not misleading. Moreover, the prosecutor's remarks were also ameliorated by the trial court's instruction that the lawyers' comments and statements were not evidence. *See Hamblin v. Mitchell*, 354 F. 3d 482, 495 (6th Cir. 2003).

Because the prosecutor's comments did not deprive petitioner of a fundamentally fair trial, petitioner is unable to establish counsel was ineffective for failing to object to these remarks. *Slagle*, 457 F. 3d at 528. Petitioner is not entitled to habeas relief on his third claim.

**D. Petitioner's remaining claims are barred by the statute of limitations.**

Respondent contends that petitioner's remaining six claims[5] which he raised for the first time in his amended petition for writ of habeas corpus are barred by the one-year statute of limitations contained within 28 U.S.C. § 2244(d)(1) because the amended petition was filed more than one year after petitioner's conviction became final and the claims raised in the amended petition

---

[5] Labeled I though VI in petitioner's amended petition.

do not relate back to the claims raised by petitioner in his original habeas petition.[6]

Under the AEDPA, a one-year statute of limitations shall apply to an application for writ of habeas corpus by a person in custody pursuant to a judgment of a state court. *See Corbin v. Straub*, 156 F. Supp. 2d 833, 835 (E.D. Mich. 2001).  The one-year statute of limitations shall run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

A petition for writ of habeas corpus must be dismissed where it has not been filed

---

[6] The Court recognizes that Judge Zatkoff granted petitioner permission to file the amended habeas petition.  This does not preclude respondent from raising a statute of limitations defense to these claims.  A statute of limitations defense to a habeas petition is not "jurisdictional," thus, courts "are under no obligation to raise the time bar *sua sponte*." *Day v. McDonough*, 547 U.S. 198, 205 (2006).  Judge Zatkoff granted petitioner permission to amend his habeas petition without making any determination as to the timeliness issue.  The fact that Judge Zatkoff granted petitioner permission to file his amended petition does not preclude respondent from raising a limitations defense to the claims raised in the amended petition. *See Quatrine v. Berghuis,* No. 2:10–CV–11603; 2014 WL 793626, * 2-3 (E.D. Mich. February 27, 2014)*;Soule v. Palmer,* No. 08–cv–13655; 2013 WL 450980, * 1-3 (E.D. Mich. February 5, 2013).  Although respondent could have filed an opposition to petitioner's motion to amend his petition, he was not required to do so under Fed. R. Civ. P. 8 until he filed an answer to the amended petition. *See Young v. Greiner,* No. 9:02-CV-1087; 2008 WL 5432219, * 9 (N.D.N.Y. December 30, 2008).

within the one-year statute of limitations. *See Holloway v. Jones*, 166 F. Supp. 2d 1185, 1187 (E.D. Mich. 2001). Petitioner's direct appeal of his conviction ended when the Michigan Supreme Court denied petitioner's motion for reconsideration of their decision to deny his application for leave to appeal on January 27, 2009. *See McClendon v. Sherman*, 329 F.3d 490, 493 (6th Cir. 2003). However, the one-year statute of limitations under 28 U.S.C. § 2244(d)(1) did not begin to run on that day. Where a state prisoner has sought direct review of his conviction in the state's highest court but does not file a petition for certiorari with the U.S. Supreme Court, the one-year limitation period for seeking habeas review under 28 U.S.C. § 2244(d)(1) begins to run not on the date that the state court entered judgment against the prisoner, but on the date that the 90-day time period for seeking certiorari with the U.S. Supreme Court expired. *See Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009). Petitioner's judgment therefore became final on April 27, 2009, when he failed to file a petition for writ of certiorari with the U.S. Supreme Court. *See Holloway*, 166 F. Supp. 2d at 1188. Petitioner filed his original habeas petition on January 13, 2010, after two hundred and sixty one days had elapsed under the one-year limitations period. Petitioner had one hundred and four days remaining under the one-year statute of limitations, or until April 27, 2010. Petitioner did not file his first motion to stay and abey the petition until July 13, 2010, almost three months after the limitations period had elapsed. This motion did not even delineate the claims that petitioner wished to raise in an amended habeas petition. It was not until March 15, 2011, that petitioner filed a motion to amend the habeas petition in which he sought to add four new claims for relief to his petition.

When a habeas petitioner files an original petition within the one-year deadline, and later presents new claims in an amended petition that is filed after the deadline passes, the new

claims will relate back to the date of the original petition only if the new claims share a "common core of operative facts" with the original petition. *Mayle v. Felix*, 545 U.S. 644, 664 (2005).

None of petitioner's remaining claims that he raised for the first time in his amended habeas petition share a "common core of operative facts" with the claims raised in his timely filed original habeas petition.[7]  Although petitioner alleged ineffective assistance of counsel and prosecutorial misconduct in his original habeas petition, the ineffective assistance of counsel and prosecutorial misconduct claims that he raises in his amended habeas petition cannot relate back to the filing date of his original habeas petition, because these claims do not share a common core of operative facts with the ineffective assistance of counsel and prosecutorial misconduct claims that he raised in the original habeas petition. *See Eller v. Bock*, 422 F. Supp. 2d 813, 818 (E.D. Mich. 2006).  Because none of petitioner's remaining claims raised in the amended petitions share a common core of operative facts with the claim raised in the original petition, these claims are barred by the one-year limitations period. *See Pinchon v. Myers*, 615 F. 3d 631, 643 (6th Cir. 2010).

The Court recognizes that petitioner alleges in the first claim in his amended habeas petition  that he has newly discovered evidence that Veronica Driskill committed perjury.

Pursuant to 28 U.S.C.§ 2244(d)(1)(D), the AEDPA's one-year limitations period begins to run from the date upon which the factual predicate for a claim could have been discovered through due diligence by the habeas petitioner. *See Ali v. Tennessee Board of Pardon & Paroles*, 431 F. 3d 896, 898 (6th Cir. 2005).  Ms. Driskill signed her affidavit recanting her trial testimony on July 17, 2007.  Under § 2244(d)(1)(D), the one-year limitations period begins to run when a

---

[7]  To the extent that petitioner may have raised in his amended habeas petition any claims that were duplicative of the claims raised in his original petition, these claims, of course, would not be barred by the AEDPA's statute of limitations.

witness executes an affidavit recanting his or her trial testimony. *See Daniels v. Uchtman*, 421 F. 3d 490, 491 (7th Cir. 2005). Because petitioner was aware of Ms. Driskill's alleged recantation before his state court appeals had been finalized, Ms. Driskill's affidavit did not delay the commencement of the one-year limitations period.

The Court recognizes that two of petitioner's claims in his amended petition are based on *Presley v. Georgia*, 558 U.S. 209 (2010), in which the Supreme Court held that a criminal defendant's Sixth Amendment right to a public trial was violated when the trial court excluded the public from the *voir dire* of prospective jurors.

28 U.S.C. § 2244(d)(1)(C) indicates that the one-year limitations period can run from "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."

The Supreme Court's decision in *Presley* would not delay the commencement of the limitations period. Indeed, "it has been well-established since at least 1984 that the closure of a courtroom during jury selection may violate a defendant's constitutional rights." *Silva v. Roden*, 951 F. Supp. 2d 222, 226 (D. Mass. 2013) (citing *Presley*, 558 U.S. at 212-13). Because petitioner's right to a public trial was recognized prior to the *Presley* decision, § 2244(d)(1)(C) would not delay the commencement of the limitations period until after the *Presley* decision was issued. *Silva*, 951 F. Supp. 2d at 226, n. 4.

The AEDPA's statute of limitations "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010). A habeas "'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some

extraordinary circumstance stood in his way'" and prevented the timely filing of the habeas petition. *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). The Sixth Circuit has observed that "the doctrine of equitable tolling is used sparingly by federal courts." *See Robertson v. Simpson*, 624 F. 3d 781, 784 (6th Cir. 2010). The burden is on the habeas petitioner to show that he or she is entitled to the equitable tolling of the one-year limitations period. *Id.* Here, petitioner is not entitled to the equitable tolling of the one-year limitations period because he has failed to argue or show that the circumstances of his case warrant equitable tolling. *See Giles v. Wolfenbarger,* 239 Fed. Appx. 145, 147 (6th Cir. 2007).

   The one-year statute of limitations may be equitably tolled based upon a credible showing of actual innocence under the standard enunciated in *Schup v. Delo*, 513 U.S. 298 (1995). *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013). The Supreme Court has cautioned that "tenable actual-innocence gateway pleas are rare[.]" *Id.* "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* (quoting *Schlup*, 513 U.S. at 329). For an actual innocence exception to be credible under *Schlup*, such a claim requires a habeas petitioner to support his or her allegations of constitutional error "with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup*, 513 U.S. at 324.

   Petitioner's case falls outside of the actual innocence tolling exception, because petitioner has presented no new, reliable evidence to establish that he was actually innocent of the crime charged. *See Ross v. Berghuis*, 417 F. 3d 552, 556 (6th Cir. 2005). Petitioner's sufficiency of evidence claims cannot be considered by this Court in determining whether an actual innocence

29

exception exists for purposes of tolling the statute of limitations period. *Grayson v. Grayson*, 185 F. Supp. 2d 747, 752 (E.D. Mich. 2002). Veronica Driskill's recanting affidavit is likewise insufficient to establish petitioner's innocence, so as to toll the limitations period. "Recanting affidavits and witnesses are viewed with extreme suspicion." *United States v. Chambers*, 944 F. 2d 1253, 1264 (6th Cir. 1991). Petitioner has presented no evidence concerning the authenticity of Driskill's affidavit, the motivation of Driskill in signing the recanting affidavit, the circumstances surrounding the affidavit's execution, or its consistency with other evidence in the trial record. Accordingly, Driskill's alleged recantation is insufficient to establish that this is "'an extraordinary case'" in which tolling based on a claim of actual innocence would be appropriate. *See Giles*, 239 Fed. Appx. at 148. Moreover, because petitioner's conviction was supported by the testimony of additional witnesses, Driskill's alleged recanting affidavit is insufficient to establish petitioner's actual innocence, so as to toll the one-year limitations period. *See e.g. McCray v. Vasbinder*, 499 F. 3d 568, 575 (6th Cir. 2007).

## IV.  Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting Barefoot v. W.J. Estelle, 463 U.S. 880, 893 n.4 (1983)). When a district court rejects a habeas petitioner's constitutional claims on the merits, the

petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id*.  Likewise, "[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because petitioner has failed to make a substantial showing of the denial of a federal constitutional right. *See Dell v. Straub*, 194 F. Supp. 2d 629, 659 (E.D. Mich. 2002).  The Court will also deny petitioner leave to appeal *in forma pauperis*, because the appeal would be frivolous. *Id.*

31

**V. Order**

Based on the foregoing analysis,

IT IS ORDERED that the petition for a writ of habeas corpus is denied with prejudice.

IT IS FURTHER ORDERED that a certificate of appealability is denied.

IT IS FURTHER ORDERED that petitioner is denied leave to appeal *in forma pauperis.*

S/ Bernard A. Friedman_____
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE

Dated:  September 29, 2015
          Detroit, Michigan